# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBIN D. COX,

        Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 3:08-cv-128

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI in August and September, 2003, alleging disability since July 25, 2003, due to diabetes, asthma, depression, fatigue, and a breathing impairment. (Tr. 73-75; 285-86; 83). Plaintiff's applications were denied initially and on reconsideration. (Tr. 55-58, 60-62; 288-91, 293-96). A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 673-98), who determined that Plaintiff is not disabled. (Tr. 18-31). The Appeals Council granted Plaintiff's request for review and remanded the matter for further consideration of Plaintiff's alleged mental impairment. (Tr. 311-15).

On remand, Judge Shell held another hearing, (Tr. 699-736), and again determined that Plaintiff is not disabled. (Tr. 15-31). The Appeals Council denied Plaintiff's request for review, (Tr. 8-11), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she has severe poorly controlled type II diabetes mellitus, asthma, exogenous obesity, right knee effusions, and major depressive disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 29, finding 3). Judge Shell also determined that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 30, findings 4, 7). Judge Shell then used section 203.26 as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.*, findings 11, 12. Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 31).

Plaintiff has a history of asthma dating to childhood for which she has received

4

emergency room treatment and which has at times required hospitalization for treatment. *See, e.g.,* Tr. 441-51, 558-83, 595-620, 637-39. At the times her asthma has been exacerbated, Plaintiff's physical examinations have revealed increased respiratory rates, wheezing, rhonchi, decreased air movement, and shortness of breath. *See, Id.* A December, 2003, pulmonary function study revealed impaired diffusing capacity of unknown etiology. (Tr. 394). Also in December, 2003, a chest x-ray revealed bilateral infiltrate. (Tr. 153). A pulmonary function study performed on January 15, 2004, revealed mild restrictive lung disease. (Tr. 156-59).

Treating physician Dr. Dallal reported on April 19, 2005, that Plaintiff's chest was clear, an x-ray showed no infiltrate, and that spirometry revealed evidence of moderate obstructive defect with some improvement following the administration of a bronchodilator. (Tr. 359-62). Dr. Dallal also reported that Plaintiff's diagnoses were consistent with possible asthmatic bronchitis, chronic rhinitis and postnasal drainage probably contributing to persistent asthma symptoms, gastroesophageal reflux disease, and probable sleep apnea. *Id.* On August 9, 2005, Dr. Dallal reported that Plaintiff had bilateral wheeze and that her spirometry revealed evidence of moderate obstructive defect. *Id.* Dr. Dallal identified Plaintiff's diagnoses as moderate asthma with recurrent exacerbation, chronic rhinitis suboptimally controlled, suspected obstructive sleep apnea, and GERD, controlled. *Id.* On February 27, 2006, Dr. Dallal noted that Plaintiff's chest was clear, her sleep study revealed mild obstructive sleep apnea, and that her spirometry showed moderate airflow obstruction with almost complete resolution following administration of bronchodilators. *Id.* Dr. Dallal also noted that Plaintiff's diagnoses were bronchial asthma overall improved although symptoms remained suboptimally controlled due to the lack of inhaled steroids, chronic rhinitis, mild obstructive sleep apnea with strong positional component, and GERD. *Id.*

Dr. Corney has been Plaintiff's treating physician since at least October, 2000. *See, e.g.,* 132-49, 209-52, 466-512. Dr. Corney reported in September, 2003, that Plaintiff's diagnoses were asthma, diabetes mellitus type II, depression, and anxiety, that she was able to stand/walk for two hours in an eight hour day and for 30 minutes without interruption, sit for four hours in an eight hour day and for two hours without interruption, lift/carry up to five pounds, and that she was unemployable and would be for between nine and eleven months. (Tr. 371-72). On November 13, 2003, Dr. Corney reported that Plaintiff's smoking interfered with treatment of her asthma, that she had two to three exacerbations a year with significant disability which made her unreliable and undependable. (Tr. 132-34).

In October, 2005, Dr. Corney reported that Plaintiff's diagnoses were asthma, diabetes mellitus type II, allergic rhinitis, anxiety, and tobacco use, her symptoms were persistent and daily, she was able to stand/walk for four hours in an eight hour day and for one hour without interruption, sit for six hours in an eight hour day and for three hours without interruption, lift/carry up to five pounds, and that she was unemployable and would be for 12 months or more. (Tr. 501-02). Dr. Corney reported on February 2, 2007, that Plaintiff's diagnoses were asthma, diabetes mellitus type II, osteoarthritis of the left knee, obesity, depression, and anxiety, she exhibited wheezing at every office visit, she was able to stand/walk for two hours in an eight hour day and for 30 minutes without interruption, sit for four hours in an eight hour day and for one hour without interruption, and lift/carry up to five pounds, and that she was unemployable and would be for 12 months or more. (Tr. 471-72).

Consulting orthopedist Dr. Martinez reported on September 27, 2006, that Plaintiff complained of left knee pain of two months duration, she was neurovascularly intact, had no

effusion, had mild varus in both knees, and that she had a questionably positive McMurray test on the right. (Tr. 438). Dr. Martinez also reported that an MRI did not show a definite tear of the medial meniscus, (Tr. 439-40), and that he would treat Plaintiff's conservatively. *Id.*

Plaintiff has a history of receiving treatment for her alleged mental impairments. Plaintiff began receiving treatment from Dr. Corney in November, 2000, at which time Dr. Corney prescribed medication. *See,* Tr. 148. Plaintiff began receiving mental health treatment at Daymont West Focus Care in October, 2003. (Tr. 174-88). At the time she initially evaluated Plaintiff, psychologist Dr. Mills noted that Plaintiff was tearful and depressed and that she visibly displayed tension by frequently wringing her hands. *Id.* Dr. Mills identified Plaintiff's diagnosis as major depressive disorder, severe, single episode and she assigned Plaintiff a GAF of 51. *Id.* Plaintiff continued to receive treatment at Daymont West until February, 2004. *Id.*

Examining psychologist Dr. Flexman reported on March 10, 2004, that Plaintiff had a tenth grade education, was receiving mental health treatment, had an anxious mood, and was oriented. (Tr. 170-73). Dr. Flexman also reported that Plaintiff's attention span was judged to be poor as was her effort, her ability to do simple reasoning was good, her concentration was fair, her intellectual functioning was average, and her recent and remote memory were good as was her effort. *Id.* Dr. Flexman noted that Plaintiff's obsessive thinking concerning somatic or other psychological problems was out of proportion with reality and somatization was present, and that her MMPI results were considered invalid.[1] *Id.* Dr. Flexman identified Plaintiff's diagnoses as

---

[1] In reaching his conclusion that Plaintiff's MMPI results were invalid, Dr. Flexman noted that Plaintiff was asked to sit in a room and complete the exam but that she left the room and went into the parking lot, taking along the test booklet and answer sheet, and filled out the test form while in her car in the company of the individual who provided transportation for her. In an affidavit dated November 17, 2006, which Plaintiff submitted to the Appeals Council, she stated that the person who was administering the test advised her that she (Plaintiff) could go "outside and get air" but did not tell her that she could not take the testing material with her. (Tr. 330).

undifferentiated somatoform disorder and depression NOS; he assigned Plaintiff a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff's abilities to understand, remember, and carry out simple instructions, to make judgments for simple work-related decisions, to concentrate, to interact with others, and to respond appropriately to work pressures in a normal work setting all were slightly impaired. *Id.*

Plaintiff returned to Daymont for mental health treatment in April, 2005. (Tr. 242-84; 397-408). On March 22, 2007, psychologist Mr. Stanchina reported that Plaintiff was moderately to markedly limited in her abilities to perform work-relate mental activities. (Tr. 513-14)[2]. Mr. Stanchina also reported that Plaintiff was being treated for major depression which interfered with her concentration, memory, and attention span, and that she was unemployable. *Id.*

On July 21, 2005, psychiatrist Dr. Pasha of Daymont reported that Plaintiff was depressed, anxious, cried several times, and that her affect was full. (Tr. 271-74). Dr. Pasha also reported that Plaintiff's diagnosis was major depression without psychotic features, recurrent, and he assigned her a GAF of 50. *Id.*

Plaintiff continued to receive treatment at Daymont and Dr. Pasha reported on August 31, 2006, that Plaintiff was not significantly to moderately to markedly limited in her abilities to perform work-related mental activities and that she was unemployable. (Tr. 463-65).

After reviewing the mental health treatment records, the medical advisor (MA) testified at the hearing that Plaintiff's mental impairment did not satisfy the Listings and that her limitations would be low stress, simple to moderately complex routine tasks, intermittent and

---

[2] Although Plaintiff refers to Mr. Stanchina as "Dr. Stanchina", the record indicates that he is a counselor who holds an M.A. degree rather than a psychologist who holds a Ph.D. or a psychiatrist who is an M.D. *See,* Tr. 401; 514. It is, therefore, questionable as to whether Mr. Stanchina is an "acceptable medical source". *See,* 20 C.F.R. § 404.1513.

occasional interaction with others, and routine tasks. (Tr. 720-31).

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting her mental health care providers' opinions and by rejecting Dr. Corney's opinion. (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are

other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Plaintiff argues first that the Commissioner erred by rejecting Dr. Pasha's and Mr. Stanchina's opinions.

Judge Shell rejected Dr. Pasha's opinion that Plaintiff is disabled on the basis that is was not supported by his objective findings and was inconsistent with other evidence of record. (Tr. 22-23). The record reflects that Dr. Pasha first saw Plaintiff in July, 2005, at which time he noted that she was depressed and anxious but that she had no abnormal perception, thought processes, affect, behavior, and cognition. (Tr. 272-73). When Dr. Pasha saw Plaintiff next in November, 2005, he reported that Plaintiff complained of being depressed but he did not evaluate her mental status. (Tr. 265). In January, 2006, Dr. Pasha reported that Plaintiff's medication was helping "wonderful" and that she was not too depressed. (Tr. 262). Finally, on March 9, and May 8, 2006, Dr. Pasha again did not evaluate Plaintiff's mental status but noted that Plaintiff had no side

effects from her medications and that she was doing "fairly well". Dr. Pasha's opinion that Plaintiff is disabled is simply inconsistent with his clinical notes. Finally, Dr. Pasha's opinion is inconsistent with Dr. Flexman's opinion as well as the MA's and the reviewing psychologists' opinions. (Tr. 190-202; 414-27).

As noted above, it is questionable as to whether Mr. Stanchina is an acceptable medical source. Nevertheless, the record reflects that Plaintiff counseled with Mr. Stanchina, at most, once every other month. In addition, Mr. Stanchina's clinical notes contain few objective findings other than noting at times that Plaintiff was depressed. *See, e.g.,* Tr. 256, 261, 264, 275, 401. Indeed, Mr. Stanchina's notes are primarily recitations of Plaintiff's subjective complaints. And like Dr. Pasha's opinion, Mr. Stanchina's opinion is inconsistent with the opinions of Dr. Flexman, the MA, and the reviewing psychologists.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Pasha's and Mr. Stanchina's opinions that Plaintiff was disabled and for relying, instead, on Dr. Flexman's, the MA's, and the reviewing psychologists' opinions.

Plaintiff argues next that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Corney's opinion that she is disabled.

First, the Court notes that the record suggests that Plaintiff has not been compliant with treatment. For example, although she has asthma, Dr. Corney noted that she continued to smoke and the MA noted that the record indicated that Plaintiff was "in and out" of treatment and took her medication on an inconsistent basis. *See, e.g.,* Tr. 133-34; 469; 474; 726.

Judge Shell rejected Plaintiff's treating physicians' opinions that Plaintiff is disabled

11

on the basis that they were not supported by objective medical evidence.[3] (Tr. 25).

Although Dr. Corney opined that Plaintiff is unemployable, his clinical notes contain few objective findings. For example, Dr. Corney primarily documented that on examination, Plaintiff had, at worst, wheezing. *See, e.g.,* Tr. 133-34; 135-49; 209-52. Further, Dr. Corney's opinion is internally inconsistent. Specifically, although he opined in October, 2005, that Plaintiff was unemployable, Dr. Corney also opined that Plaintiff was able to stand/walk for four hours in an eight hour day and for one hour without interruption and sit for six hours in an eight hour day and for three hours without interruption, abilities that are consistent with performing some level of work. Additionally, in contrast to Dr. Corney's opinion, pulmonary studies indicated that Plaintiff had, at worst, a mild to moderate impairment. Further, although the record reflects that at times Plaintiff experienced exacerbations of her asthma, those were isolated events. In addition, treating physician Dr. Dallal, who documented at times that Plaintiff's chest was clear, reported that Plaintiff had, at worst, a moderate pulmonary impairment which improved after the administration of bronchodilators. Finally, Dr. Corney's opinion is inconsistent with the reviewing physician's opinion. *See,* Tr. 428-35.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Corney's opinion that Plaintiff is unemployable.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact

---

[3] Although Plaintiff alleges that Judge Shell failed to discuss Dr. Corney's opinion in his decision, the Court notes that in rejecting the treating sources' opinions, Judge Shell specifically referred to a report from Dr. Corney.

to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 13, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).